**STATE of Maine**

**v.**

**Fred E. BENOSKI et al.**

Supreme Judicial Court of Maine.

Sept. 9, 1971.

Ronald Ayotte, County Atty., Biddeford, for plaintiff.

Patrick L. J. Veilleux, Kittery, Harry S. Littlefield, Wells Beach, James H. Dineen, Kittery, Waterhouse, Carroll & Cyr, By

Harold D. Carroll, Robert N. Cyr, Biddeford, George S. Hutchins, Jr., York, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

An interlocutory ruling denying a motion to suppress evidence in this criminal proceeding has been reported for review pursuant to M.R.Crim.P., Rule 37A(b). Defendants have been indicted and await trial upon a charge of possession of stolen property, namely "one Realistic transreceiver, model 18 and one Kennedy tool box, full of machinist's tools."[1]

On December 19, 1969 Officer Moulton made application to a complaint justice for a search warrant. The application was accompanied by two "affidavits," both of which the officer says he prepared and signed on December 19 and to both of which he says he made oath before the complaint justice before the warrant issued. As will be seen, the first document captioned "Affidavit" bears no jurat whereas the second document captioned "Affidavit and Request for Search Warrant" bears a jurat indicating that Officer Moulton made oath to the same. Although the Justice below made no findings in support of his order of dismissal on the motion to suppress, we must assume that all disputed issues of fact were resolved favorably to the State's position. The Court could have found on the basis of the Moulton testimony and reasonable inferences to be drawn therefrom that the officer took oath to both "affidavits" simultaneously and that in attaching the jurat to but one of the sheets, the complaint justice treated the two documents as but parts of a single affidavit, intending the single jurat to apply to both.

That being so, we may properly determine the validity of the search warrant, treating the two part "affidavit" as a single supporting document.

The affidavit, warrant and return were in the following form:

"December 19, 1969
6981

## AFFIDAVIT

ALBERT E. MOULTON, being duly sworn, deposes and says:

That he is a Police Officer in York, York County, Maine. I, on December 17, 1969 in Dover N. H. met with Inspector James Rowe of the Dover Police Department and a confidental informant, whom has proven reliable to him.

1. 12–18–69 1700 hours informant advised Rowe that a 17 year old male subject had a quanity of marijuana in his right hand jacket pocket under his glove. Rowe arrested subject and found material as and where described.

2. 12–18–69 A.M. Informant advised Rowe smoking material small brass pipe to be on or near window ledge by a flat roof suspects apartment. Search made material found with residue of hashish as in location and as described.

Said informant stated that on the weekend of December 6, 1969 to the best of his recollection did then and there see in a house duly described and checked by this Officer to be 23 Halstead Street, Kittery, Maine rented by Ronald L. Clark, and occupied by him and others. Present at this time of observation, Robert Cullen, Fred Benoski, Robert H. King, Ronald L. Clark, party known only as Popie (spelling?) and two (2) unidentified females, approximately 18 years of age.

---

1. The indictment is not made a part of the record on report. We glean this information from the arguments of counsel, a matter as to which there is apparently no dispute. Although the questions of law presented can be decided without reference to the indictment, we suggest the advisability of including the indictment in the record on report when the issue is suppression of evidence.

Did see a Magnavox Stereo set, approximately 5 feet in length, being carried in. Set up in Living Room a good size marble table, and on the floor 6 or 7 T.V. sets, one a white protable; was offered a T.V. for $30.00 or less. Conversation during time informant present indicated the Magnavox Stero, marble table, CB Realistic receivers, would be kept in the apartment.

The above named were talking about 74 breaks in the general York area and that many would not be discovered until spring.

Subjects present were also breaking down a kilo of marijuana on the kitchen table into small bags.

Affiant prays a search warrant be issued for above stated residence; For possession of stolen property and narcotic drugs, marijuana, hallucigens that may be contained there in.

s/ Albert E. Moulton"

\* \* \* \* \* \* \* \* \* \*

"STATE OF MAINE

YORK, SS.      DISTRICT COURT
District TEN
Division of
SOUTHERN YORK
6981

AFFIDAVIT AND REQUEST FOR
SEARCH WARRANT

To Duncan A. McEachern, Complaint Justice, of the District Court to be holden at Kittery in the County of York, and State of Maine.

Albert E. Moulton a York Police Officer of York, in the County of York in said State of Maine, on oath complains that he has probable cause to believe and does believe that on the premises known as premises owned by William C. Hushing, Richard B. Redmayne, d/b/a Coastal Associates located at 23 Halstead Street, in the Town of Kittery County of York in said State, said premises being occupied by Ronald L. Clark .

There is now being concealed certain property, to wit;

> One, Magnavox Stero, model #3ST 662-A, FRWB Ser. #1743316 one large marble top coffee table with wrought iron frame weight about 150 lbs.
>
> 2: Realistic C.B. Transceivers, one model 18, one model 128

that said property (state reason for seizure) Is stolen property, an is being illegally kept at said premises.

WHEREFORE, the said Albert E. Moulton prays that a warrant may issue authorizing a search in the daytime of the above described premises, for said property; and that if said property, or any part of the same be there found, the said Ronald L. Clark, or the person having said property in his custody or possession, may be arrested and held for examination as the law directs.

Dated at Kittery, Maine, this 19th day of December 1969.

s/Albert E. Moulton

Subscribed and sworn to by the said Albert E. Moulton this 19th day of December 1969 before me

s/ Duncan A. McEachern
Complaint Justice"

\* \* \* \* \* \* \* \* \* \*

"(Side 1)

STATE OF MAINE

YORK, ss.      DISTRICT COURT
District of 10th
Division of
Southern Maine
6981

SEARCH WARRANT

To the Sheriff of York County, or any of his deputies or any other authorized officer:

Affidavit having been made before me by Albert E. Moulton that he has reason

to believe that on the premises known as William C. Hushing, and Richard B. Redmayne DSA Coastal Assoc. (Alfred Reg. Deed, vol. 1833, p. 657, Town of Kittery, MAP-M16, lot 36 located at 23 Halstead Street, in the Town of Kittery County of York and State of Maine, said premises being occupied by Ronald L. Clark et al.

there is now being concealed certain property, to wit:

> one, Magnavox Streo, model #3ST 662–A, FRWB Ser. #1743316,
>
> one large marble top coffee table with wrought iron frame weight about 150 lbs.
>
> 2: Realistic C.B. Transceivers, one model 18, one model 128

As I am satisfied that there is probable cause to believe that the property so described and used is being concealed on the premises above described, upon the following grounds:

Upon affidavit of Chief Albert E. Moulton supplemented by his oral testimony. Said affidavit being sufficient.

You are hereby commanded to search the place named for the property specified, serving this warrant and making the search in the daytime and if the property be found there to seize it, prepare a written inventory of the property seized, and bring the property and the person in whose possession or custody the same was found before a District Judge.

Dated, this 19th day of December 1969.
s/ Duncan A. McEachern
Complaint Justice"
"(Side 2 of Search Warrant)

STATE OF MAINE

York, ss                    12–19–1969

By virtue of the within warrant, I have searched the premises named therein and there found

1. Realistic C.B. Transceiver model 15

1. Marble Coffee Table Top

1. Am FM Pansonic Small Table Clock Radio

1 set   Compass and wheel cuff links & tie pin

1 set world globe cuff links.

9 coins in cuff link box

2 fishing poles w/reels

2 fishing poles w/o reels

1 pr. swank cuff links

1 set stainless steel sliverware in case
Oneida LTD.

·1 Kennedy Tool Box (Full machinist tools.

1 Corona Portable Typewriter

1 Sears solid state portable stereo.

and I now have the same together with the said Ronald L. Clark et al in whose possession or custody they were found before the Court for examination.

s/  Albert E. Moulton

STATE OF MAINE
COUNTY OF YORK
CLERK'S OFFICE Filed, Jan. 26 11:49 AM '70

William Wilson, Clerk  /s/ GC".

We turn first to the search warrant itself. M.R.Crim.P., Rule 41(b) as amended October 4, 1967 states the following:

> "(b) Grounds for Issuance. A warrant may be issued under this rule to search for and seize *any property*:
>
> (1) *Stolen* or embezzled; or
>
> (2) Designed or intended for use or which is or has been used as a means of committing a criminal offense; or

(3) The possession of which is unlawful; or

(4) Consisting of non-testimonial evidence which will aid in a particular apprehension or conviction." (Emphasis supplied.)

It is obvious that it is essential that the magistrate find probable cause to believe that the property to be searched for falls in one of these categories, in this case the category of stolen property. Such a finding must in turn be adequately based upon the affidavit. M.R.Crim.P., Rule 41 (c) provides in part:

"If the judge or complaint justice is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. * * * It shall state *the grounds of probable cause for its issuance* and the names of the persons whose affidavits have been taken in support thereof." (Emphasis supplied.)

The search warrant here made no reference to the property described as property stolen or probably stolen and no other ground was suggested for a search other than that the property was "concealed" on the premises. The warrant was deficient as violative of the plain requirements of Rule 41(c) in this respect.[2]

Moreover, a finding that there was probable cause to believe the items listed were stolen property, even if made, would have lacked requisite support. The affidavit contained the bare, unsupported statement of the affiant that the property described "is stolen property." The affiant did not purport to speak from personal knowledge and no underlying circumstances were related which would support such a conclusion. In his testimony at the suppression hearing the officer made it clear that he based that conclusion entirely on the information furnished by the informer. When we examine that information as set forth in the affidavit, it is apparent that the informer entertained no more than a lively suspicion that some or all of the items he observed *might* have been stolen. It may be that his suspicions were well founded but mere suspicion will not suffice to ground a finding of probable cause. We held in State v. Hawkins (1970) (Me.), 261 A.2d 255, 259 that in compliance with M.R.Crim.P., Rule 41(c) the affidavit must "contain all the information on which the magistrate's judgment is based as to the existence of probable cause." *Hawkins* recognized that probable cause may be based on what the affidavit directly states and on such reasonable inferences as may be drawn therefrom by the magistrate. In State v. Cadigan (1969) (Me.), 249 A.2d 750 as in State v. Hawkins, supra, we emphasized the principle that affidavits which are as to any essential element merely conclusory will not suffice. Underlying circumstances which base the conclusion must be shown. In so saying we recognized that affidavits for search warrants must be tested in a common sense and realistic rather than a hypertechnical fashion. United States v. Ventresca (1965) 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684; United States v. Harris (1971) 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723. Our opinions in *Cadigan* and *Hawkins* and the decision we reach today accord, we believe, with the guide lines and principles laid down by the Supreme Court.[3]

The importance of the requirement of "underlying circumstances" is well illustrat-

2. Compare the form for a search warrant in Form 31, Appendix of Forms in M.R. Crim.P. in which the reason for search is set forth as "a thirty-eight caliber revolver *used in the unlawful killing* of Richard Roe." (Emphasis ours.) This form is readily adaptable to cover a "tool chest and the tools therein stolen from Richard Roe," thus assigning a proper reason for search.

3. For an excellent summary of these guidelines, see Rosencranz v. United States (1966) 1 Cir., 356 F.2d 310, 314.

ed when we note that even at the time of the hearing on suppression three months after the seizure, the officer had not been able to establish that any of the items covered by the warrant were stolen property. Of the items seized at the time of search, only the tool box and the tools contained therein could be identified with reasonable probability as stolen property but no mention of these had been included either in the affidavit or in the warrant. The language found in Giordenello v. United States (1958) 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 is fully applicable here:

> "The complaint contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant's belief; and it does not set forth any other sufficient basis upon which a finding of probable cause could be made."

We must conclude that the search was conducted under an invalid warrant and the property seized may not be used in evidence.[4]

■ It is suggested that the seizure of the tools and tool box may now be justified as incident to a lawful arrest which was made on the premises by Officer Moulton after his entry pursuant to the warrant, the officer then having probable cause to believe those articles were stolen. But here the arrest was tainted by the unlawfulness of the entry and the search. As we said in *Hawkins*, "The arrest cannot be based upon the results of the search." The principle was accurately stated in United States v. Elliott (1962) D.C.Mass., 210 F.Supp. 357, 360 where the Court said:

> "The government further contends that the search of the defendant's house was incidental to his arrest and therefore lawful. The evidence does not support this view. The arrest of the defendant followed the unlawful search and was based upon evidence obtained from the defendant as the result of the unlawful search. *The government may not justify the arrest by the search and at the same time justify the search by the arrest."* (Emphasis ours.) [5]

■ Since the result in this case is determined by the factors considered above, it becomes unnecessary to consider other inadequacies of the affidavit patent upon its face.[6] Suffice it to say that the affidavit must be in such form that the magistrate can make his own independent find-

4. In contrast, the affidavit held good in Rugendorf v. United States (1964) 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 recited facts relating to the theft of furs and their presence in the premises to be searched, the labels having been removed therefrom.

5. In so saying, we are aware of those authorities which hold that when officers are on the premises under a *valid* search warrant and there discover property not named in the warrant but which they have probable cause to believe has been stolen, they may properly seize the stolen items. Commonwealth v. Wojcik (1971) (Mass.), 266 N.E.2d 645; People v. Edwards (1970) 14 Cal.App.3d 57, 92 Cal.Rptr. 91; United States v. Berry (1970) 10 Cir., 423 F.2d 142; State v. Bolen (1970) 205 Kan. 377, 469 P.2d 422. But compare State v. Brochu (1967) (Me.), 237 A.2d 418 in which there was no affirmative showing that the officers had probable cause to believe the items improperly seized (not designated in the warrant) comprised evidence of the commission of a crime.

6. Even though the magistrate may properly rely on the assessment of reliability by a police officer other than affiant if such assessment is based on experiences of such officer tending to support such assessment which are properly communicated to the magistrate by the affidavit, the affidavit should adequately state the source of affiant's information thus communicated. The magistrate is not precluded from basing a judgment as to reliability of an informer on facts supplied by an officer other than the affiant merely because the information reaches him as hearsay but he may treat them as coming from a responsible source. See Jones v. United States (1960) 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; See State v. Smith (1971) (Me.), 277 A.2d 481, 488.

ing that there is probable cause to believe an informer is reliable and his information is trustworthy.

We are satisfied that the motion to suppress in the instant case should have been granted.

Appeal sustained.

Case remanded to the Superior Court for further proceedings not inconsistent with this opinion.